at his official capacity as U.S. Secretary of State. Mr. Peterson for the appellant. Mr. Tenney for the appellate. Good morning, Your Honors. May it please the Court. Good morning. My name is James Peterson, representing Appellant Judicial Watch in this matter. Once again, we are before this Court because more remains to be done. As we all know, after she left office, former Secretary of State Hillary Clinton took four years' worth of federal records with her. Some time thereafter, on her own, Secretary Clinton and her attorneys deleted more than 30,000 of these e-mail records. Since that time, extensive efforts have been made to recover these 30,000 deleted e-mails. Some estimates suggest only about 5,000 have been recovered. That's why we're here today, because more remains to be done. In this case, the District Court found that it is moot. Well, it's clearly not moot, because we identified specific sources of e-mails that have yet to be tapped that, consistent with this Court's prior opinion in this case, provide more than imaginable potential sources of records. These are federal records that must be returned, and the Federal Records Act, as per this Court's prior opinions, provides the remedy to do so. What do you do with the District Courts? The District Court reviewed the affidavits from the FBI and its conclusion that there was really nothing more it could do that would likely yield any more e-mails. And then he points out that he says, look, if this was the result of an FBI investigation, a national security investigation, where they had every incentive to try to find everything they could, what more is likely to be found based on just a referral from the State Department? I mean, his finding was that the purpose of this statute is to engage law enforcement in the effort. It's been engaged under a national security investigation, and there's really no basis to think anything more could be found. Well, the purpose of the statute is that in this situation, there's a nondiscretionary duty of the agency head to go to the Attorney General. Right, but the question we have is whether the case is moot now, because there's a less than speculative chance you'll find anything. That's the question. Right. We're not arguing this isn't about the Secretary's duty, right? It's about whether the case is moot, whether there's any jurisdiction to consider the Secretary's duty. Well, with respect, Your Honor, in a sense, it's the government's position, apparently, calling for close judicial supervision of the efforts to be made. They want this Court to decide that, well, everything has been looked at. Well, that, frankly, is up to the – is better decided before the lower court, and certainly not on a motion to dismiss. We have pointed to specific sources, not just speculative. You're going to the merits, and the district court has raised – and our previous decision raises a jurisdictional issue, which is, is the case moot? That's the issue you have to focus on. I agree. This case is not moot because more remains to be done. Emails have not been recovered. We have pointed to specific potential sources. It is not even our burden to do so, but we have done so to demonstrate this, and these other sources clearly have not been accessed. They don't claim otherwise. The FBI's affidavit, which was entirely conclusory, nonspecific, and self-serving, there was no reason to believe that they went to these people. The government's position seems to confirm that they did not do so. The FBI's investigation also was targeted at looking for, which of course they found, numerous emails containing classified information. There's no reason – we have no evidence in the record that they have looked for every email, they've read every email. They were focused very much, as you say, very much specifically on national security concerns. We have every reason to believe that they were – If the FBI was focused on national security concerns, wouldn't it have had a powerful incentive to find every possible email? That's what it was looking for. It was looking to see whether the former secretary had released classified information, right? So they had to look at – they had to try to find every email they could. There's no evidence in the record that they went, other than a bald statement that says, we went to her most frequent email correspondence. That could have been – Well, it's not a bald statement. You've got two long affidavits here going through every step the FBI took. It's hard for me to see – I mean, I understand your argument, but it's hard to see how, given the detailed affidavit, we can second-guess any of that. How would you – maybe I should ask you the question this way. Looking at the affidavits, what's missing? What could we find is missing there that could lead us to think that this case is not – The FBI's affidavit states only that we contacted her most frequent email correspondence. That might have only been two or three of her top aides. We need to know specifically, with evidence, who they contacted. First, who they attempted to contact, who they actually reached, what the person's response was. Did that person have records? Did that person provide any records? Did the FBI find that that response was sufficient? Did they believe that? We'd identified more than – dozens of potential sources of emails. This Court's prior opinion says that if only a few emails – it's just imaginable that a few emails are out there, then this case is not moot. We identified hundreds. That was an example, right? I'm sorry? Wasn't that an example? They gave that as an example. Well, I think it's pretty clear that the holding of this Court is that if only a few emails – It is the agency duties to go get them. It's the agency that let these walk out the door. And it is their responsibility in this extraordinary circumstance to do everything they reasonably can do to go get them. They have not done so. It's a very peculiar statute in that it seems to contemplate that the final action here is notifying the Congress and advising the Attorney General to bring an action. So it seems to me it raises the question of redressability, the flip side of mootens perhaps, as to whether the Attorney General could ever decide to bring an action against whom after he's done an investigation and concluded there's nothing more to do. The FBI is the Attorney General's investigative arm, correct? Well, it is possible that, especially in this day and age, the Attorney General might have a different view than the FBI. So I don't think it's necessarily consistent with the statute to assume what the Attorney General may do. The Attorney General, once he receives the referral that he's required to under the statute, might decide that he wants to spend more time investigating the President's tweets. On the other hand, the Attorney General might find that time is better spent pursuing these many other potential sources of records that remain out there. The standard for mootens is you have to show that there's more than a speculative chance that it will affect the plaintiff's rights. And I mentioned it right there because you're in the midst of doing an awful lot of speculation about what the AG may or may not do. On the contrary, Your Honor, with respect, we provided an affidavit upon a review of tens of thousands of emails that were received identifying correspondence of Secretary Clinton. This was not speculation as to who she contacted. There's no dispute that she sent them. Let me just pursue Judge Ginsburg's question. Okay. So let's assume he refers it. It goes over. First thing the Attorney General is going to do is ask the FBI what they found. So what basis is there for suspecting that after the FBI went through this extensive, multiyear national security search, it would report to this Attorney General what it reports here, which is we can't think of any steps that are likely to yield more emails. What would cause the Attorney General to say, well, I want you to go do another investigation? Why would that happen? Well, speculating, Your Honor. That's my point. If we're going to speculate on what the Attorney General might do. I wasn't speculating. I was asking you for an answer. And your answer is speculating on what the Attorney General might do when presented with this FBI investigation. The Attorney General hopefully will be presented with what the FBI has done and the other opportunities that remain to be done. There's no doubt, like here if the government says otherwise, that these other correspondents that we identified have been contacted. If they have been contacted, fine. Let's get the affidavit and get to the details about how it was done. Okay. Until then, it's not moot. All right. Well, thank you, Your Honor. Thank you. We'll hear from the government. May it please the Court, I just want to start by clarifying one factual point. There was a question about whether there was evidence in the record that they were looking for all emails as opposed to classified emails. So I would call your attention to page 148 of the joint appendix, which is from one of the affidavits. It says, the FBI sought all potentially work-related emails from the former secretary's tenure and then provided relevant emails for classification reviews to the appropriate government agencies. So I think that should answer that question. The last time this case was before this Court, the Court concluded that the record then before the Court did not demonstrate that the case was moot because it didn't demonstrate that the government had already secured the emails that could be obtained through an enforcement action that would be the end point of this litigation. Here there's not an enforcement action. On remand, the government provided extensive evidence of enforcement actions and voluntary compliance that the FBI obtained. The Court's opinion the last time focused on the BlackBerry emails and said, well, you haven't taken action to recover those. And on remand, there was evidence of obtaining the equipment that was used to store the BlackBerry emails, of legal process that was served on the service providers for the BlackBerry emails. And so the enforcement action that was at issue the last time this case was before this Court has been taken, and the plaintiff doesn't suggest otherwise. So now plaintiff is trying to move, has not identified an enforcement action and is instead saying that the State Department should take more steps to ask some more questions to follow up on what was, as has been discussed, an extensive FBI investigation. And I would just note that although this is an unusual case, the legal rule that plaintiff is advocating here doesn't have a limiting principle. Plaintiff is saying if any government employee sends out correspondence and then the government employee's copy of the correspondence goes away, then there's an obligation under the Federal Records Act enforceable in court for to go after the person who received the correspondence. And that, you know, in this case it happens that a lot of this work has already been done. But this Court emphasized in the last opinion that the remedy here is to get the enforcement resources. And so it's targeted as circumstance when there's somebody who has government records and is refusing to turn them over and then the investigative arm of the United States or the enforcement arm, the attorney general, can be brought to bear on that and provide and go after the person and file an action and say you have government records, you have to give them back. And that's not what plaintiffs are asking for anymore because all of those steps have been taken. And so we would submit that the case is moot. I have a question about the statute. And I know this isn't relevant, at least at this point, but Judge Ginsburg says it's a very curious statute. It says he shall do it, the cabinet member shall refer it, if he knows or has reason to believe. Now, suppose the secretary says, well, I'm not making the referral because I have no reason to believe that there's anything out there. Are there any cases where a court has ordered the secretary to make the referral notwithstanding that finding? Do you know of any? I'm not aware of a case like that, Your Honor, no. How would a court even do that? I guess the plaintiff would have to show that the secretary's statement that he or she has no reason to believe is not supported by any evidence or something. Then the court could order the secretary to make the referral. I guess that's the theory, right? I think that's the theory on which a plaintiff would proceed, as you said, that we're not aware of a case that's come down that way. So do you think it's dispositive in a case like this that the FBI, the purpose of the statute was to involve law enforcement in the effort, correct? If the agency couldn't find them, then you send it to justice. So here we have a situation where the FBI has already done an investigation. Is that sort of by itself dispositive, or is it the government's view that we're free to actually take a look at the FBI investigation and make a judgment about whether we think it was sufficiently thorough? This Court's cases have made clear that sort of second-guessing the thoroughness of a general effort is not what this statute is aimed at. This is a cause of action for agency action unlawfully withheld under the APA, which is much more narrow than that. If there's a particular thing that wasn't done, for example, the last time this case was before the Court, the Court said, all right, we don't have evidence in the record. There's a particular thing. We think there are particular people out there who might have the e-mails, and you haven't gone after them at all, and they would have an obligation to turn them over to you, because these are government records. You know, these are people who are acting on behalf of the former secretary. I'm thinking of the service providers. And so this Court, at least for mootness purposes, held out the possible ñ it didn't reach the merits expressly, but at least for mootness purposes said, okay, we can think of an order which would say, all right, go after the service providers, and so the case is in moot and sent the case back. Now, on remand, of course, the record demonstrated that there had been extensive efforts to go after those people, both through voluntary compliance and through legal action. And so that avenue has been closed, and again, the plaintiff doesn't contend otherwise. So at this point, we do think it's dispositive that the enforcement actions that were at issue in this case have been taken. That's what makes a case moot. Unless there are any more questions. Thank you, Your Honor. Mr. Peterson, I think you were out of time, right? You can take one minute. Thank you, Your Honor. The purpose of this statute is to recover records. More remains to be done. We do not have any ñ we do not have the specific evidence that every effort has been made. All of this is undisputed. If we walk away now, we allow an agency which has dragged its heels in every step of this to say, well, we think we've done enough, we don't want to do any more. That's not the purpose of the Federal Records Act. More remains to be done.
judges: Tatel, Edwards, Ginsburg